# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

TARA REGINA LYLE (# L7222)                                                 PETITIONER

v.                                                                       No. 3:06CV97-M-A

MDOC, ET AL.                                                                                RESPONDENTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Tara Regina Lyle for a writ of *habeas corpus* under 28 U.S.C. § 2254. The state has moved to dismiss the petition because the petitioner has not exhausted her state remedies for any of her claims. In her response to the motion to dismiss, the petitioner asks that she be permitted to return to state court to exhaust her claims – or, construed liberally – that the court simply excuse her failure to exhaust. If the petitioner returned now to state court, she may be able to exhaust her claims, but she would be barred from federal *habeas corpus* review by the one-year statute of limitations. 28 U.S.C. § 2244. In the interest of judicial efficiency – and so that the petitioner's claims may be reviewed at the federal level, the court has considered these claims. For the reasons set forth below, the instant petition for a writ of *habeas corpus* shall be denied.

### Facts and Procedural Posture

Tara Regina Lyle was convicted in the Circuit Court of Union County, Mississippi, of murdering her husband. After agreeing to meet her husband in New Albany, Mississippi, she shot him once, severing his spinal cord. He fell to the pavement. Then Tara Regina Lyle stood over him and shot him two more times. She did so in full view of several witnesses – including her twelve-year-old daughter Kelcy. When the police arrived, Tara Regina Lyle was still holding

the murder weapon – a .380 caliber pistol – and told the police that she had shot her husband. After a jury found her guilty, she was sentenced to serve life in the custody of the Mississippi Department of Corrections. Lyle appealed her conviction and sentence to the Mississippi Court of Appeals, in which she raised the following issues (as stated by counsel in appellant's brief):

> A.  Whether the appellant was deprived of her right to effective assistance of counsel, due process and a right to a fair trial by the court's denial of her request for a continuance?
>
>> 1.  The trial court improperly chose appellant's attorney.
>>
>> 2.  Appellant was denied her right to due process and effective assistance of counsel by the trial court's denial of her motion for continuance.
>
> B.  Appellant was not represented by an attorney licensed to practice in Mississippi.
>
> C.  Appellant suffered ineffective assistance of counsel.
>
>> 1.  Whether counsel's failure to investigate harmed appellant?
>>
>> 2.  Appellant's counsel should have conducted a sufficient voir dire.
>>
>> 3.  But for counsel's errors the result would have been different.
>>
>> 4.  Cumulative error.

On August 2, 2005, the Mississippi Court of Appeals affirmed the petitioner's conviction and sentence. *Lyle v. State,* 908 So. 2d 189 (Miss. App. 2005). Lyle did not pursue the direct appeal to the Mississippi Supreme Court. She also did not file a petition for post-conviction relief challenging her conviction and sentence for murder from the Union County Circuit Court.

The petitioner raises the following issues in her federal Petition for Writ of Habeas Corpus (as stated by Lyle):

>   A. Ground One - Ineffective assistance of counsel at trial - My new attorney, Darrell Brown, failed to inform me of the improbability of acquittal and benefit of plea bargain when I risked facing a sentence twice as long as that offered under plea bargain. There was no time for Attorney Brown to conduct pretrial discovery or subpoena additional witnesses on my behalf. The Court said Attorney Brown was in good standing when he was granted an oral *pro hac vice* even though later findings would reveal him being under investigation and thus has been suspended from practicing law.
>
>   B. Ground Two - Due process (5th Amendment) - Every motion for continuance was denied by trial judge (Howorth) who tried to create an attorney/client relationship with the firm who was having legal woes. This infringed upon my 6th amendment right to assistance of counsel. There were several juror prejudices which would have been uncovered if my new attorney had been given time to review Mississippi rules and procedures. There were two jurors, #68 and #83 who were related or affiliated with one of the prosecutor's chief witness. There was only one black on the juror panel due to the prosecution using peremptory challenges to strike all potential black jurors demonstrating race was a factor in determining such jurors.

## Discussion

An inmate seeking federal *habeas corpus* relief must first exhaust state court remedies by presenting each issue to the state's highest court for review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 67 USLW 3682 (1999). None of the issues in the present federal petition have been exhausted. First, the petitioner's direct appeal stopped with the decision of the Mississippi Court of Appeals; she did not move for rehearing or seek a writ of *certiorari* in the Mississippi Supreme Court. As such, none of the issues she presented in this case were exhausted on direct appeal. The issues presented to the Mississippi Court of Appeals – but not

the Mississippi Supreme Court – are (in the petitioner's words):[1]

- There was no time for Attorney Brown to conduct pretrial discovery or subpoena additional witnesses on my behalf.

- The court said Attorney Brown was in good standing when he was granted an oral *pro hac vice* even though later findings would reveal him being under investigation and thus had been suspended from the practice of law.

- Every motion for a continuance was denied by the trial judge (Howorth) who tried to create an attorney/client relationship with the firm who was having legal woes. This infringed upon my 6th Amendment right to assistance of counsel.

- There were several juror prejudices which would have been uncovered if my new attorney had been given time to review the Mississippi rules and procedures. There were two jurors #68 and #83 who were related or affiliated with one of the prosecutor's chief witness.

Second, the petitioner raised two issues for the first time in the instant petition for a writ of *habeas corpus* (in the petitioner's words):

- My new attorney, Darrell Brown, failed to inform me of the improbability of acquittal and benefit of a plea bargain when I risked facing a sentence twice as long as that offered under the plea bargain.

- There was only one black on the juror panel due to the prosecution using peremptory challenges to strike all potential black jurors demonstrating race was a factor in determining such jurors.

These two claims have not been presented to any state court – and certainly not the Mississippi Supreme Court. As such, none of the petitioner's claims have been exhausted.

---

[1] The petitioner collected her various claims for relief into two grounds. The court has separated them into six distinct grounds for discussion in this opinion.

## The Court May Deny These Claims Despite
## the Petitioner's Failure to Exhaust Them

Although the AEDPA requires total exhaustion of each claim as a prerequisite for a district court to *grant* a petition, it allows the court to *deny* a petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254 (b)(1)(A); 28 U.S.C. § 2254(b)(2). The court therefore has discretion to deny each of petitioner's claims for relief either on the merits – or as procedurally barred – rather than dismissing the petition as mixed. *Neville v. Dretke*, 423 F.3d 474, 480-482 (5th Cir. 2005), *Alexander v. Johnson,* 163 F.3d at 908 (district court may deny relief on an unexhausted claim). The court shall take this approach, rather than put the petitioner through the lengthy – and ultimately futile – process of exhausting her claims in state court, only to have those claims rejected by this court in the future.

## The Trial Court's Decision Not to Continue the Trial

Three of the petitioner's issues are simply different aspects of the same claim: the trial court's decision not to grant a continuance when the petitioner decided to hire a new attorney two weeks prior to trial. Those issues are:

> ▸ There was no time for Attorney Brown to conduct pretrial discovery or subpoena additional witnesses on my behalf.

> ▸ Every motion for a continuance was denied by the trial judge (Howorth) who tried to create an attorney/client relationship with the firm who was having legal woes. This infringed upon my 6th Amendment right to assistance of counsel.

> ▸ There were several juror prejudices which would have been uncovered if my new attorney had been given time to review the Mississippi rules and procedures. There were two jurors #68 and #83 who were related or affiliated with one of the prosecutor's chief witness.

The petitioner argues that her counsel was ineffective because he had inadequate time to prepare a defense. A chronology of events leading up to the trial brings these claims into perspective. Lyle was arrested the day she killed her husband, December 2, 2002. The petitioner hired attorney Jimmy D. Shelton of Tupelo to represent her. She made bond. The Grand Jury returned an indictment against the petitioner for murder on April 9, 2003. On May 23, 2003, the date of the petitioner's arraignment, she discovered that Shelton's license had been suspended. Another member of the Shelton firm, William C. Stennett, represented the petitioner at her arraignment. Trial was set for September 10, 2003. At a hearing held two days before trial, Stennett moved to withdraw as counsel because the petitioner had selected Arkansas attorney Darrell Brown to defend her. Brown had contacted Stennett to relay this information, but Brown was not in court for the hearing. The court permitted Stennett to withdraw, but Jonathon Crump, also of the Shelton firm was present on the petitioner's behalf at the September 10, 2003, trial. At trial Darrell Brown defended the petitioner as lead counsel. Thus, the petitioner was represented at trial by two attorneys – both from firms the petitioner had chosen.

Stennett also moved for a continuance at the September 8 hearing, two days before trial. The trial court denied the motion, stating its "definite aversion" to granting a continuance based upon a last-minute change of defense counsel. Newly retained counsel Darrell Brown also moved for a continuance on the day of trial, arguing that he had less than two weeks to prepare for the murder trial – and that amount of time was insufficient to mount a proper defense to a murder charge. The trial court denied that motion, as well, holding that, although counsel had not had "a great deal of time" to prepare, he had been given "adequate time" to muster a defense

for his client. The jury found the petitioner guilty of murder, and the trial court imposed a sentence of life imprisonment in the Mississippi Department of Corrections.

The petitioner appealed her conviction and sentence on October 10, 2003, and the Mississippi Court of Appeals affirmed on August 2, 2005. The petitioner did not seek review in the Mississippi Supreme Court. On August 17, 2005, attorney Darrell Brown wrote to the petitioner, informing her that her judgment was affirmed – and that the petitioner still had the option of filing a federal petition for a writ of *habeas corpus*. Brown wrote the petitioner again on September 19, 2005, informing her that Brown's license to practice law had been suspended in the state courts of Arkansas – but that he was still licenced to practice in federal court. Again attorney Brown informed the Lyle of the option to seek federal *habeas corpus* relief. Lyle filed the instant *pro se* petition for a writ of *habeas corpus* July 20, 2006

The petitioner's claim that her attorney did not have ample time to prepare must be denied on the merits. The court must consider six factors in analyzing a state court's denial of a motion for continuance that a defendant claims interfered with her fair and reasonable opportunity to obtain particular counsel: (1) the length of the requested delay; (2) whether the lead counsel has an associate who is adequately prepared to try the case; (3) whether other continuances have been requested and granted; (4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the court; (5) whether the requested delay is for a legitimate reason, or whether it is dilatory and contrived; (6) whether there are other unique factors present. *Gandy v. Alabama,* 569 F.2d 1318, 1324 (5th Cir.1978).

An analysis of these factors leads the court to conclude that the denial of the petitioner's motion for a continuance was fair and reasonable. First, the petitioner did not specify the length

of the continuance requested. This factor is thus neutral. Second, Counsel had another member of his firm, William Stennett, who was adequately prepared to try the case. This factor weighs against a continuance. Third, it does not appear that any continuances had been previously requested or given. This factor weighs in favor of a continuance. Fourth, nearly all of the witnesses would have been inconvenienced with the granting of a continuance at such a late date. This factor weighs heavily against a continuance. Fifth, the requested delay was not for a legitimate purpose. The petitioner had more than three months after learning of Jimmy D. Shelton's suspension to select new counsel, but waited until near the eve of trial to obtain new counsel – then ask for a continuance. There appears to be no legitimate reason for such a long delay. Thus, this factor weighs against a continuance. Finally, the unique factors in this case are the overwhelming proof of the petitioner's guilt – and that she in fact *did* obtain the counsel of her choice – and kept counsel from her previous firm.

Under the facts of this case, the court cannot conceive a defense that would have led to the petitioner's acquittal – no matter who she retained as counsel. She shot her husband in front of several witnesses, including her daughter. The police arrived minutes later and removed the murder weapon from her hand. She told the police on the scene that she killed her husband. During an interview with police, she confessed to the murder – and stated that she had never shot a gun before, so she had gone to a shooting range to practice on the weekend before she shot her husband. The level of proof against Tara Regina Lyle was overwhelming. Under Mississippi law, she was "hopelessly guilty." *Woodward v. State*, 635 So.2d 805 (Miss. 1993).

In addition, the petitioner knew that Jimmy D. Shelton had been suspended from the practice of law on May 23, 2003. However, she waited approximately three months to select

another attorney. Stennett was "part of the case to begin with." S.C.R., Vol. 2, p. 2. He was the primary criminal defense attorney at the Shelton firm. S.C.R., Vol. 2, p. 9. He prepared the case for trial and was ready to proceed. The petitioner decided to change attorneys some two weeks before trial and requested a continuance to give her attorney time to prepare. The trial court informed the petitioner that she could change attorneys, but the motion to continue the trial would be denied. The petitioner decided to move forward with her new attorney, and, although Stennett had withdrawn as counsel, a member of Stennett's firm was present to defend the petitioner, as well. As such, the petitioner was represented by *two* firms of her own choosing at trial.

Having weighed these factors, the court holds that they weigh against a continuance. Therefore, the petitioner's claim that she was unable to retain the counsel of her choice – because the trial court denied a continuance – is without merit.

### The Faulty Procedure for Admitting Attorney Brown to Practice in Mississippi Courts *Pro Hac Vice*

The petitioner claims that Darrell Brown, the attorney of her choosing, was not competent to practice law in Mississippi because the trial court did not use the proper procedure in admitting Brown to practice *pro hac vice*. The Mississippi Court of Appeals discussed this issue at length and found it to be procedurally barred. The court agrees with this assessment, and for the reasons set forth below (quoting from the Mississippi Court of Appeals opinion), also finds the issue to be without merit:

> ¶ 26. Mrs. Lyle argues that while her counsel may have had the express permission of the trial court to practice in Mississippi, the manner in which he was allowed to practice calls into question his competency.

¶ 27. This is a question of law, which we review de novo. *In re Williamson,* 838 So.2d 226, 233 (¶ 14) (Miss.2002).

¶ 28. The procedures for attorneys not licensed to practice in Mississippi to follow to appear before a Mississippi court are found in Rule 46(b) of the Mississippi Rules of Appellate Procedure. The foreign attorney is allowed to appear *pro hac vice* if he or she is in good standing in the bar of another state and is of good moral character. M.R.A.P 46(b)(2). The foreign attorney must file an informational affidavit with the local court and with the Supreme Court Clerk that includes a list of requirements for practicing in this state and pay a fee of $200. *Id.* at 46(b)(5). *See* M.R.A.P 46(2)(b)(5) for the requirements of the informational affidavit. The foreign attorney must also have associated a local attorney in order to appear before a Mississippi court. M.R.A.P. 46(b)(4). The rule provides that, except by agreement of the parties, the court before which the attorney desires to appear shall not rule on the application of foreign counsel to appear as counsel *pro hac vice* sooner than twenty-one days after service of the informational filing. M.R.A.P.46 (b)(6). The foreign attorney cannot appear as counsel *pro hac vice* until he or she has certified to the trial court that a copy of the order authorizing the attorney to appear has been provided to the Clerk of the Supreme Court. M.R.A.P. 46(b)(7).

¶ 29. It is clear that Attorney Brown did not timely follow all of the procedures to be admitted *pro hac vice.* Although Brown did not follow all of the rules for admission pro hac vice prior to the trial, he did obtain a bench ruling from the trial judge allowing him to represent Lyle. There was no objection from the State to Brown's participation in this case. Brown did complete the admission requirements very soon after the trial was over, and by written order was granted admission *nunc pro tunc.* It is also equally clear that there has been no indication that Brown was not eligible for *pro hac vice* admission.

¶ 30. The penalty for failure to abide by the admission rules is that upon motion by any party any pleading or other papers from the foreign attorney not in compliance with Rule 46 shall be stricken. M.R.A.P. 46(B)(11).

¶ 31. The issue of an attorney's lack of credentials to qualify as a *pro hac vice* attorney, should be raised prior to trial, or such failure procedurally bars raising it on appeal. *Terrell v. Tschirn,* 656 So.2d 1150, 1152 (Miss.1995) "Where a party knows or with reasonable diligence may have discovered the Rule 46 violation, the failure to file a motion prior to trial acts as a waiver and procedurally bars him from raising the issue on appeal." *Id.* The reason for this ruling is that an attorney "should not be allowed to take his chances with a jury and then, after he loses," file a motion based upon his non-compliance with Rule 46. *Id.*

¶ 32.  The same reasoning would appear to be applicable to the case sub judice. Mrs. Lyle is procedurally barred from raising her attorney's failure to comply with Mississippi's *pro hac vice* requirements.  Now that she has taken her chances with the jury and lost her case, she cannot now raise the issue on appeal.  The request that Brown participate in the case came from Mrs. Lyle, who had employed him. A party will not be heard to object to her own request.  *Caston v. State*, 823 So.2d 473, 502 (¶ 101) (Miss.2002).

*Lyle v. State*, 908 So.2d 189, 194-196 (Miss. App. 2005).

### Ineffective Assistance of Counsel

The petitioner sets forth two claims of ineffective assistance of counsel:  (1) that attorney Brown failed to apprise the petitioner that she would probably be convicted of murder and thus should have accepted the plea bargain offered by the state, and (2) that the decision of the trial court to reject the petitioner's motion for a continuance (to allow her new attorney to prepare for trial) denied her effective assistance of counsel.  Both of these claims are without merit.  The burden to establish ineffective assistance of counsel is a heavy one.  To do so the petitioner "must show that (1) [her] counsel's performance was deficient and (2) the deficient performance prejudiced [her] defense."  *Pitts v. Anderson*, 122 F.3d 275 (1997); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The petitioner must prove both deficient performance and actual prejudice to her legal position.  Thus, if the petitioner fails to establish one of these elements, the claim fails, and court need not discuss the other.  *Id.*

In addition, a federal court reviewing a petition for a writ of *habeas corpus* "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689.  The court must not use the crystal clarity of hindsight; instead, it must view

counsel's actions based upon the circumstances at the time in question. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994); quoting *Strickland*, 466 U.S. at 689. If counsel's performance was deficient, "then [the court] must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different." 172 F.3d at 275 (quoting *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997)).

The petitioner simply cannot show that her defense was prejudiced by these alleged deficiencies. As discussed above, the petitioner shot her husband three times in front of several witnesses. She remained on the scene; the police retrieved the murder weapon from her, and she confessed, later admitting that she actually went to a firing range the weekend before the murder to hone her shooting skills. The absolutely overwhelming proof against her defeats her ineffective assistance of counsel claims.

The petitioner's first claim – that her attorney failed to inform her of "the improbability of acquittal" – is simply beyond belief. Lyle does not argue that her attorney failed to inform her about the maximum penalty she might face for murder; instead, she argues that she did not understand that a jury would almost certainly convict her. A defendant cannot make an informed choice about whether to accept a plea offer unless she fully understands the risks of trial. *U.S. v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005). The court holds, however, that any reasonable person, including Lyle, would understand the risks of going to trial under these facts. Lyle could not argue that she did not realize what proof the state would use against her. Indeed, she provided the most damaging evidence herself – by committing the murder in a public place, remaining at the scene until the police arrived, then confessing to the crime.

Despite her assertion that she believed she might be acquitted, Lyle does not state what

she believed her defenses would have been, and, indeed, the court cannot conceive of a viable defense. Under the facts of this case, no reasonable person could expect to be acquitted – whether her lawyer discussed the matter with her or not. Obviously, a plea offer of incarceration for less than a life sentence would have benefitted the petitioner. According to Lyle, she received and rejected such a plea offer. The decision to accept or reject the plea offer rested ultimately with the Lyle. *U.S. v. Herrera*, 412 F.3d 577 (5th Cir. 2005). She took her chances at trial, and the jury found her guilty. As such, the petitioner's claim that her attorney's performance was deficient because he failed make her aware of the consequences of going to trial is without substantive merit.

Likewise, Lyle does not state how a continuance might have affected the outcome of her case – given the mountain of evidence available to secure her conviction. No amount of extension would have enabled her attorney to achieve a more favorable result. A week . . . a month . . . a year later, the state would still have had the same evidence against her. She would still be "hopelessly guilty." *Woodward v. State*, 635 So.2d 805 (Miss. 1993). Lyle thus cannot prove that she was prejudiced by her new attorney's inability to obtain a continuance in the case. As such, her claim that his defense of her was deficient must be denied.

### Claim Under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986)

The petitioner claims:

▸ There was only one black on the juror panel due to the prosecution using peremptory challenges to strike all potential black jurors demonstrating race was a factor in determining such jurors.

The court shall construe this allegation as a claim under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). In *Batson*, the United States Supreme Court held as unconstitutional the practice of exercising peremptory challenges during *voir dire* to exclude potential jurors because of their race. To establish a *prima facie* of discrimination under *Batson*, the petitioner must prove: (1) that she is a member of a cognizable racial group, (2) that the prosecutor has exercised peremptory challenges removing from the venire members of the petitioner's race, and (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen from the petit jury on the basis of race. *Batson*, 476 U.S. at 96. The petitioner has not made out her *prima facie* case under *Batson*. The petitioner is black; as such, she is a member of a cognizable racial group. The court will assume – for the purposes of this memorandum opinion only – that the prosecutor used his peremptory challenges to eliminate at least one black member of the venire.[2] The plaintiff cannot, however, prove the third element of her *Batson* challenge.

As an initial matter, the petitioner did not object to the prosecution's use of peremptory challenges at trial; nor did the petitioner raise this issue on direct appeal. As such, this issue is procedurally barred. *Sones v. Hargett*, 61 F.3d 410 (5th Cir. 1995), *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

---

[2]The court makes this assumption because the jury list does not appear to be in the record.

The claim is also meritless. First, the prosecutor exercised only two of his twelve peremptory challenges. Second, the petitioner admits that one of the jurors who decided her case was black. Clearly, if the prosecutor were truly exercising his peremptory challenges to prevent black jurors from sitting on the petit jury, he would have used one of his *ten* remaining challenges to remove that juror. He did not. The court holds that the prosecutor's use of only two of twelve peremptory challenges – and the presence of a black member on the petit jury, show that the prosecutor was not using race as a basis to exercise his peremptory challenges. As such, the plaintiff's claim under *Batson* shall be denied.

In sum, all of the plaintiff's claims shall be denied. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 16th day of May, 2007.

                                        **/s/ Michael P. Mills**
                                        **UNITED STATES DISTRICT JUDGE**